UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

AMERISURE MUTUAL INSURANCE )
COMPANY, a foreign corporation, )
)
)
      Plaintiff, )
)
)
vs. )
)
)
M & R DRYWALL, INC., a Florida )
corporation, )
)
)
      Defendant. )
_____ )

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, AMERISURE MUTUAL INSURANCE COMPANY, by and through undersigned counsel, files the following Complaint for Declaratory Relief against Defendant, M & R DRYWALL, INC., and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Amerisure Mutual Insurance Company ("Amerisure") is an insurance company organized and incorporated under the laws of the State of Michigan with its principal place of business in Farmington Hills, Michigan.

2. Defendant, M & R Drywall, Inc. ("M & R") is a corporation organized under the laws of the State of Florida and has a principal place of business in Pompano Beach, Florida.

3. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-02, and there is an actual controversy between the parties.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as this is a matter between citizens of different states and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) as the insurance policy that is the subject of this action and under which loss is claimed was issued to defendant in this District and the defendant has its principal place of business in this District.

## FACTUAL BACKGROUND

## THE UNDERLYING ACTION

6. On December 16, 2003, M & R contracted with MAPP Construction LLC ("MAPP") to perform drywall and stucco work at a multi-unit apartment complex known as the Southgate Towers (the "Project") in Baton Rouge, Louisiana. The multi phase project was substantially completed sometime in 2005.

7. On December 20, 2006, the Project owner, Southgate Towers, LLC ("Southgate"), filed a lawsuit against MAPP, M & R, and others (the "Southgate Suit") alleging a variety of problems and construction defects that became apparent during construction. The construction defects are alleged to be caused by M & R's poor workmanship. A true and correct copy of the Complaint in the Southgate Suit is attached hereto as Exhibit 1.

8. On or about October 25, 2007, counsel for M & R requested that Amerisure defend M & R in the Southgate Suit. Amerisure has undertaken the defense of M & R in the Southgate Suit pursuant to a full reservation of all rights.

9. The Southgate Suit alleges that construction on the Southgate Project began in September of 2003 and was substantially completed by March or June of 2005.

10. It is alleged by Southgate that M & R poorly constructed the entire building envelope, the interior drywall and the exterior stucco work. Southgate further alleges that M & R's poor workmanship of the building envelope, the stucco, and the drywall, require full and complete replacement of each component part of the envelope. The complaint in the Southgate Suit further alleges that the parapet wall was not capped by the general contractor while the

stucco was being installed resulting in water/moisture intrusion. The Southgate Suit further alleges that the drain plane under the stucco was improperly constructed by M & R. M & R, allegedly installed the exterior felt under the stucco vertically rather than horizontally. This improper installation requires complete removal and replacement of the walls.

11. The Southgate Suit alleges that as the result of water intrusion into the building caused by M & R's defective workmanship there has been damage to wallboard, sheet rock and gypsum board, and rusting of the metal wall studs, all products installed by M & R.

12. The Southgate Suit also alleges that the potential for "excess organic growth" now exists at the building.

13. Because of M & R's poor workmanship, Southgate claims that the water damage has been ongoing and progressive since 2004, following each rain event. Southgate alleges damages from 2004 to 2006.

14. The Southgate Suit also alleges that M & R breached its contract by failing to provide a surety bond for the Project.

15. The Southgate Suit alleges that delays in the performance of the work resulted in a number of incidental damages and further water intrusion.

## THE INSURANCE POLICIES

16. Amerisure issued a general liability insurance policy to M & R, Policy Number GL 2025891, effective for the policy period 12/18/04 to 12/18/05 (the "2004 Policy"). A true and correct copy of the 2004 Policy is attached hereto as Exhibit 2.

17. The 2004 Policy provides in pertinent part, as follows:

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured

        becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply. . . .

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period;

        **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period known to have occurred by any insured listed under Paragraph **1.** of Section II – Who is An

          Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage;" or

        (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2.**    **Exclusions**

**j. Property Damage**

    "Property damage" to:

        . . .

    (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was

5

incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to "property damage" included it the "products-completed operations hazard."

1. **Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

    This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## SECTION V – DEFINITIONS

. . .

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Products-completed operations hazard" means:

(a) Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   1. Products that are still in your physical possession; or

   2. Work that has not yet been completed or abandoned.

   3. However, "your work" will be Deemed completed at the earliest of the following times:

      a. When all of the work called for in your contract has been completed.

      b. When all the work to be done at the job site has been

        completed if your contract calls for work at more than one job site.

  c.  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

"Property damage" means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Your work":

  a.  Means:

    (1)  Work or operations performed by you or on your behalf; and

    (2)  Materials, parts or equipment furnished in connection with such work or operations.

  b.  Includes:

    (1)  Warranties or representations made at any time with respect

        to the fitness, quality, durability, performance or use of "your work"; and

   **(2)** The providing of or failure to provide warnings or instructions.

18. The 2004 Policy also includes the Fungi or Bacteria Exclusion, CG 21 67 (04/02 edition), which provides as follows:

This insurance does not apply to:

Fungi or bacteria

 **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

 **b.** Any loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, "fungi" or bacteria by any insured or by any other person or entity.

          \* \* \*

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

19. Amerisure issued subsequent CGL policies to M & R through December 18, 2008 as follows: Policy No. GL 2025891010005 (12/18/05 – 12/18/06); Policy No. GL 2025891020006 (12/18/06 – 12/18/07); Policy No. GL 2025891030007 (12/18/07 – 12/18/08). Amerisure also issued an umbrella liability policy to M & R, Policy No. CU 2025892-00 (12/18/04 – 12/18/05). True and correct copies of the policies are attached hereto as Exhibits 3-6, respectively. The relevant terms of the policies are substantially similar to those of the 2004 Policy stated above (collectively the "Amerisure Policies").

## NO OCCURRENCE OF PROPERTY DAMAGE DURING THE POLICY PERIOD

20. The Amerisure Policies provide coverage for "property damage" resulting from an "occurrence" during the policy period.

21. The Southgate Suit alleges that property damage occurred in 2004, 2005 and 2006.

22. To the extent that the damages alleged do not result from an "occurrence" during the policy periods, there is no indemnity owed under the Amerisure Policies.

23. The Southgate Suit alleges that M & R Drywall's work was defective. To the extent damages are sought for the repair or replacement of defective work, such damages do not constitute "property damage" arising from an "occurrence" and are not covered by the Amerisure Policies.

24. The Southgate Suit alleges damages due to breach of contract for alleged failure to obtain a surety bond. To the extent damages are sought for breach of the subcontract, such damages do not constitute an "occurrence" and are not covered by the Amerisure Policies.

25. The Southgate Suit alleges certain economic damages, such as increased labor costs. To the extent damages are sought for economic losses, such damages do not constitute "property damage" and are not covered by the Amerisure Policies.

## KNOWN LOSS AND LOSS IN PROGRESS

26. The Amerisure Policies preclude coverage for "property damage" known to have occurred, in whole or in part, prior to the policy period.

27. The Southgate Suit alleges damages due to defective workmanship by M & R Drywall that was known by M & R Drywall prior to the policy period.

28.     To the extent that M & R Drywall knew of "property damage," in whole or in part, prior to the policy period, such damages are not covered by the Amerisure Policies.

## DAMAGE TO PROPERTY EXCLUSIONS

29.     The Amerisure Policies preclude coverage for "property damage" to that particular part of any property that must be restored, repaired or replaced because the insured's work was incorrectly performed on it.

30.     To the extent that "property damage" occurred as a result of M & R's work on the Project, such "property damage" is excluded and not covered by the Amerisure Policies.

## FUNGI OR BACTERIA EXCLUSION

31.     The Southgate Suit alleges that moisture and water intrusion issues resulted in the potential for "excess organic growth."

32.     The Amerisure Policies exclude coverage for "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence or presence of, any "fungi" or bacterial on or within a building or structure, including its contents.

33.     To the extent there is "property damage" caused by any "fungi" or bacteria, such "property damage" is excluded and not covered by the Amerisure Policies.

## ONE OCCURRENCE

34.     The Southgate Suit alleges ongoing and continuing water intrusion and other damages.

35.     To the extent that the Southgate Suit alleges an "occurrence" of "property damage" during the policy period, such damages are the result of "continuous or repeated

exposure to substantially the same general harmful conditions," and would constitute only one "occurrence" under the Amerisure Policies.

### COUNT I – DECLARATORY JUDGMENT

36. Amerisure incorporates by reference the allegations set forth in Paragraphs 1 through 35 of the Complaint as if fully set forth herein.

37. This is an action for declaratory judgment and for other necessary or proper relief pursuant to 28 U.S.C. §§ 2201-02.

38. Amerisure contends that the Amerisure Policies do not provide coverage for the damages alleged to have been caused by M & R as alleged in the Southgate Suit.

39. Amerisure has tendered a defense to its insured, under a full reservation of rights, and seeks a declaratory judgment in connection with the its indemnity obligation under the Amerisure Policies. Specifically, this declaratory judgment is sought to interpret and determine the parties' rights with regarding to the interpretation of the entire policy, but with particular attention to the specific provisions referenced herein.

40. A present, actual, and justiciable controversy exists between Amerisure and M & R concerning the coverage limit afforded by the Amerisure Policies under applicable law.

41. Amerisure seeks a judicial declaration of the applicability and enforcement of the coverage condition of the Amerisure Policies, property damage exclusion, occurrence definition, "your work" definition, the Fungi or Bacteria Exclusion, and the known loss or loss in progress determination under the applicable policy language.

42. An actual controversy exists between Amerisure and M & R as to whether M & R are entitled to any indemnity under the Amerisure Policies in relation to the Southgate Suit.

43. Judicial resolution of this matter will resolve the dispute between Amerisure and M & R concerning the parties' respective rights and duties under the Amerisure Policies and applicable law and will be in the interests of justice, as it will clarify the parties' contractual relationship and render further litigation unnecessary.

44. Under the foregoing circumstances, a declaratory judgment premised on the application of the applicable language and the applicable law is proper pursuant to 28 U.S.C. §§ 2201-02.

**WHEREFORE**, Plaintiff Amerisure Mutual Insurance Company seeks declaratory relief that it has no obligation to indemnify M & R for the claims alleged in the Southgate Suit because:

1. The claims do not give rise to liability insurance coverage;

2. The claims do not give rise to "property damage";

3. The claims do not give rise to an "occurrence";

4. The claims do not give rise to "property damage" caused by an "occurrence" during the policy period;

5. M & R knew, in whole or in part, that "property damage" had occurred at the Southgate Project prior to the policy period for the Amerisure Policies;

6. To the extent the Southgate claims constitute "property damage" caused by an "occurrence', those damages result in only one occurrence;

7. The claims and damages are excluded from coverage;

8. Amerisure has no indemnity obligation towards M & R under the Amerisure Policies for any of the damages alleged against M & R in the Southgate Suit; and

9. For such other reasons as may be shown at trial.

Dated this 8th day of June, 2010.

             COZEN O'CONNOR

By: *s/ Anaysa Gallardo*
   Anaysa Gallardo (FL Bar No. 0707635)
   E-mail: agallardo@cozen.com
   Wachovia Financial Center
   200 South Biscayne Blvd., Suite 4410
   Miami, FL 33131
   Telephone: (305) 704-5940
   Facsimile: (305) 704-5955

       *and*

   Kimberly Sullivan (FL Bar No. 0112143)
   Email: ksullivan@cozen.com
   Cozen O'Connor
   301 South College Street, Suite 2100
   Charlotte, NC 28202
   Tel. No.: (704) 376-3400
   Fax No.: (704) 334-3351

   ATTORNEYS FOR PLAINTIFF
   AMERISURE MUTUAL INSURANCE
   COMPANY

MIAMI\89438\1 271805.000